William **LUCAS**, Jim House, John
Thomason, and Howard McCully,
Plaintiffs/Appellants,

v.

**DOVER CORPORATION, NORRIS
DIVISION**, Defendant/Appellee.

No. 85–2002.

United States Court of Appeals,
Tenth Circuit.

Sept. 27, 1988.

Fred C. Cornish, Cornish & Renbarger,
Inc., Tulsa, Okl. (Robert Renbarger, Cornish & Renbarger, Inc., and Alvin Hayes,
Jr., Tulsa, Okl., with him, on the brief), for
plaintiffs/appellants.

Richard L. Barnes, Tulsa, Okl., for defendant/appellee.

Before HOLLOWAY, Chief Judge, SETH and STEPHEN H. ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiffs/Appellants, four former supervisory employees of defendant Dover Corporation, Norris Division ("Dover"), brought an action against Dover pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, alleging that Dover had terminated their employment in violation of the ADEA. A jury returned verdicts for plaintiffs and further found that Dover had willfully violated the ADEA. The district court accordingly awarded damages, costs, and attorney's fees to plaintiffs. The district court subsequently granted Dover's motion for judgment notwithstanding the verdict and dismissed plaintiffs' claims. Plaintiff appeal. For the reasons set forth below, we affirm.

## BACKGROUND

Dover manufactures valves and other energy-industry-related equipment at its Elwood plant in Tulsa, Oklahoma. In 1982, Dover encountered a significant downturn in business, due to the energy recession, and was accordingly required to reduce its work force dramatically.[1] Plaintiffs were four of approximately eighteen supervisory employees who were terminated pursuant to the reduction in force.[2] Of the eighteen who were terminated for economic reasons, eleven were under the age of forty and seven were over the age of forty. Defendant's Ex. 5. The parties do not dispute the severity of the energy recession nor the necessity for Dover to reduce its work force significantly.

Four management employees established the criteria for determining which employees would be fired pursuant to the reduction in force. These employees were Edwin Bechtold, the President of Dover's Norris Division, Brad Bertram, the Vice President of Operations and General Manager at the Elwood Plant, Charles Chatnuef, the Manufacturing Manager at the Elwood Plant, and Paul Lane, the Material Manager at the plant. The criteria were management and supervisory ability, technical skills, ability to get along with people, and length of service.[3] Bertram testified that he reminded his supervisory employees of the ADEA when he told them the retention criteria to be used. Bechtold testified that he had final authority for all terminations that occurred in 1982. R.Vol. IV at 329.

Plaintiff Lucas was sixty-two when he was terminated in December 1982. He had worked for Dover for over forty-two years. He had held various supervisory positions for many years, including the position of Supervisor of Inspections. In 1980, Lucas was transferred from the position of Supervisor of Inspections to the position of Supervisor of the Tool and Die Department. In July 1982, Dover initially transferred Lucas to the position of Final Inspection Foreman and filled the position of Supervisor of Tool and Die with a man in his late thirties. Dover ultimately decided to consolidate the position of Supervisor of Tool and Die with a supervisory position in Tool Grinding, which was held at that time by a younger employee, Johnny Six. It determined to retain Six instead of Lucas to fill the consolidated position. Bertram testified that Six's greater knowledge of tool grinding made him more qualified for the position than Lucas. In December 1982, Dover eliminated the position of Final Inspection Foreman and discharged Lucas. Another younger employee, Danny Day,

---

1. The district court found that Dover reduced its work force "from approximately 370 to 90 employees." R.Vol. I, Tab 39 at 3. Nonsupervisory employees were subject to a collective bargaining agreement, which dictated the manner in which such employees would be laid off. No such agreement determined the method by which Dover could reduce the number of its supervisory employees.

2. Apparently, four other supervisory employees resigned during 1982, and there was conflicting testimony regarding the circumstances under which one of those employees left Dover.

3. Bechtold testified that it was "very necessary that each individual that we retained have as many skills—multiple skills, if possible." R.Vol. IV at 353.

had been awarded the position of Supervisor of Inspections. At the time of Lucas' termination, Dover decided to retain Day in that position instead of putting Lucas there. Chatnuef testified that Day had better skills in handling people and had "more than adequate technical skills." R.Vol. IV at 384.

Plaintiff House was forty-seven and held the position of Supervisor of Drafting when he was terminated in September 1982. He had worked for Dover for over nineteen years. Pursuant to the reduction in force in 1982, the drafting department at Dover was reduced to two draftsmen, and House's duties as Supervisor of Drafting were initially consolidated under the chief engineer and House was terminated. When the chief engineer complained to Bertram that he was unable to supervise the Drafting Department and perform his duties as chief engineer, Dover assigned House's duties as Drafting Supervisor to thirty-year-old Dennis Mannon, a designer at Dover. Dover justifies that decision on the basis that, while both House and Mannon were qualified draftsmen, Mannon had education and experience as a designer, whereas House did not.

Plaintiff Thomason was sixty years old and held the position of Supervisor of Receiving and Materials Storage when he was terminated in July 1982. He had worked for Dover for more than eight years. When the positions of Supervisor of Receiving and Materials Storage and Supervisor of Valve Parts Warehouse were consolidated during the reduction in force, Dover retained Lewis Williams, the thirty-nine-year-old Supervisor of Valve Parts Warehouse, and terminated Thomason. Dover's explanation for that decision is that Williams had greater technical knowledge of valves and thus had superior ability to supervise the consolidated area.[4]

Plaintiff McCully was sixty-one years old and had worked for Dover for more than thirty-six years when he was terminated in December 1982. He held the position of Maintenance Foreman at that time. When Dover decided to consolidate McCully's duties with those of another maintenance foreman, thirty-three-year-old Bill Moutschka, Dover retained Moutschka and terminated McCully. Dover presented testimony that its decision to retain Moutschka over McCully was based on Moutschka's superior knowledge of electronics, which was important to the maintenance of newer machines.

Thus, each plaintiff lost his job pursuant to a consolidation of his job with another position, or when his job position was eliminated. It is undisputed that plaintiffs were in the protected age group of between forty years and seventy years of age, and Dover does not dispute the district court's finding, supported by the record, that each plaintiff was qualified for the position he held at the time of termination.[5] It also appears undisputed that when the newly consolidated positions were filled, a younger person was selected over each plaintiff.[6]

The essence of plaintiffs' complaint in this case is that, in determining which employees to retain and which to fire in the course of its reduction in force, Dover manipulated its stated criteria so that, when the individual decisions were made to retain plaintiffs or younger employees, the younger employees were always retained and plaintiffs were fired. Dover's motive, plaintiffs argue, was to build a "team for the future" of employees who would be able to contribute many more years of service to Dover. Dover argues that adverse economic conditions necessitated a reduction in its work force and a consolidation of various positions and that it terminated plaintiffs, not because of their age, but because they were less qualified to perform

---

**4.** Bechtold testified that Thomason "had pretty good people skills, but ... a very limited range of technical skills." R.Vol. IV at 338.

**5.** Dover does, of course, dispute each plaintiff's qualifications to fill the *newly consolidated* positions.

**6.** In Lucas' case, the position he last held was eliminated, but two previous positions he had held, one of which was consolidated with another job, were filled by younger men.

in the newly consolidated positions than those retained.

The district court granted Dover's motion for judgment n.o.v. "because the plaintiffs did not present sufficient evidence to create a factual question that there was a reasonable probability the defendant's articulated reasons for plaintiffs' terminations were pretextual."[7] Plaintiffs' appeal argues that there was substantial evidence supporting the jury's verdict and that the district court, in granting Dover's motion, impermissibly substituted its own judgment for that of the jury.

## DISCUSSION

■ Judgment n.o.v. "should be cautiously and sparingly granted." *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n,* 763 F.2d 1166, 1171 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed. 2d 289 (1985) (quoting *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 680 (10th Cir. 1981)). It is "appropriate only when 'the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made.' " *Id.* (quoting *Symons v. Mueller Co.,* 493 F.2d 972, 976 (10th Cir.1974)). In determining whether the grant of a motion for judgment n.o.v. is appropriate, the court must view the evidence and indulge all inferences in favor of the party opposing the motion and " 'cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury.' " *Id.* (quoting *Joyce,* 651 F.2d at 680 n. 2). Applying those standards to this case, we find that judgment n.o.v. was properly entered for Dover.

■ It is well settled that an ADEA plaintiff must establish that age was a "determining factor" in the employer's challenged decision. *E.E.O.C. v. Sperry Corp.,* 852 F.2d 503, 507 (10th Cir.1988). "Plaintiff need not prove that age was the *sole* reason for the employer's acts, but must show that age 'made the [sic] difference' in the employer's decision." *Id.* (citing *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n,* 763 F.2d at 1170); *see also Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988).

■ A party may attempt to "meet his burden directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge." *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). Or, more typically, a party may rely on the proof scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981) and applicable to ADEA cases. *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed. 2d 523 (1985); *Sperry Corp.,* 852 F.2d at 507; *Schwager v. Sun Oil Co. of Pennsylvania,* 591 F.2d 58, 60–61 (10th Cir.1979). Under that proof scheme, to set forth a prima facie case of age discrimination, a plaintiff must ordinarily prove that "(1) the affected employee was within the protected age group; (2) [he] was doing satisfactory work; (3) [he] was discharged despite the adequacy of this work; and (4) a younger person replaced [him.]" *Sperry Corp.,* 852 F.2d at 507; *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d at 1547; *Cockrell v.*

7. The district court had previously overruled Dover's motion for a directed verdict at the close of plaintiffs' case, finding that "the defendant should go forward here to articulate the 'non-discriminatory' reasons for these terminations." R.Vol. IV at 316. The district court also overruled Dover's renewed motion for a directed verdict at the close of all the evidence, as well as plaintiffs' motion for a directed verdict. R.Vol. V at 526, 549. In overruling Dover's renewed motion, however, the court stated:

> I seriously question whether there is evidence in this case wherein the plaintiff has sustained its burden of proof in providing the Court with evidence indicating a substantial probability that but for their age they would not have been terminated. And more particularly as a result of that evidence that would permit the trier of fact to conclude that the reasons advanced for their termination was pretextual.

> *Id.* at 548.

*Boise Cascade Co.,* 781 F.2d 173, 177 (10th Cir.1986).

> "In reduction-in-force cases ... courts have modified the fourth prima facie element by requiring the plaintiff to 'produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.' ... This element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force."

*Branson v. Price River Coal Co.,* 853 F.2d 768 (10th Cir.1988) (quoting *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982)); *see Oxman v. WLS–TV,* 846 F.2d 448, 453–54 (7th Cir.1988); *Thornbrough v. Columbus and Greenville R.R.,* 760 F.2d 633, 642 (5th Cir.1985).[8] Once the plaintiff establishes a prima facie case, the burden shifts to the employer to "show that a legitimate, nondiscriminatory reason motivated the decision." *Sperry Corp.,* 852 F.2d at 507; *see also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The plaintiff must then "rebut the employer's showing by demonstrating that the proffered justification is a pretext." *Sperry Corp.,* 852 F.2d at 507. The plaintiff retains throughout the ultimate burden of proving that age was a determining factor in the challenged decision. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Cooper,* 836 F.2d at 1547; *Dreyer v. Arco Chemical Co.,* 801 F.2d 651, 653–54 (3d Cir.1986).

■ Here, plaintiffs relied on the *McDonnell Douglas—Burdine* indirect proof scheme. Each plaintiff admitted that he had no direct evidence of age discrimination other than his own belief that age was the only factor that distinguished him from the person who was retained. As the district court found, the record reveals no evidence of either statements or documents which directly suggest that age was a factor. Given the posture of this case, our task is to determine whether there was sufficient evidence that Dover's proffered reasons were a mere pretext so as "to permit a reasonable factfinder to conclude that age was a determinative factor in the employer's decision." *Sperry Corp.,* 852 F.2d at 507.

We address plaintiffs' claims, bearing in mind that we must indulge all inferences in favor of plaintiffs. We note, however, that this court is " 'not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones.' " *Matthews v. Allis–Chalmers,* 769 F.2d 1215, 1218 (7th Cir. 1985) (per curiam) (quoting *Parker v. Fed. Nat'l Mortgage Ass'n,* 741 F.2d 975, 980 (7th Cir.1984)) (emphasis in original), *over-*

---

**8.** The exact nature of the modification in reduction in force cases has been variously stated. *See generally Branson,* 853 F.2d at 771 n. 5; *Oxman v. WLS–TV,* 846 F.2d 448, 454 (7th Cir. 1988); *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1166 (8th Cir.1985); *Thornbrough,* 760 F.2d at 642–45; *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395 (3d Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984); *E.E.O.C. v. Western Electric Co.,* 713 F.2d 1011, 1015 (4th Cir.1983); *Coburn v. Pan American World Airways,* 711 F.2d 339, 343 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. Unit B 1981).

This reduction in force case involves more than simply a lay-off of employees. Three of the plaintiffs lost their jobs when the positions they held were consolidated with other positions. The newly consolidated positions arguably required new and different qualifications, and the positions they previously held were, as such, abolished. One plaintiff's job was eliminated.

We need not in this case explore the parameters of the prima facie case in reduction in force cases or in this particular case. The district court impliedly found that plaintiffs established their prima facie case and based its grant of judgment n.o.v. on whether plaintiffs met their burden of establishing that Dover's proffered reasons for terminating plaintiff were pretextual. *See also* R.Vol. IV at 314–15. For the purposes of this appeal we assume plaintiffs established their prima facie case. *See also Branson,* 853 F.2d at 771 ("While reduction-in-force cases present exigencies not present in other employment discrimination cases, these exigencies are best analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the discharge.").

*ruled on other grounds, Oxman v. WLS–TV,* 846 F.2d 448 (7th Cir.1988).

Plaintiffs make much of alleged inconsistencies and contradictions in the testimony of Dover's witnesses, and argue that Dover demonstrated a "cavalier attitude" toward the retention criteria to be applied to each plaintiff. Upon careful examination, we find that these alleged inconsistencies and contradictions fail to provide even circumstantial evidence that Dover's proffered reasons for terminating plaintiffs were pretextual.

Plaintiffs urge that the retention criteria were inconsistently applied and were manipulated so that older employees could be terminated. For example, plaintiffs argue that while both Bechtold and Bertram testified that length of service was one of the criteria used, Chatnuef and Lane testified that, in making recommendations on whom to terminate, they did not consider length of service. Plaintiffs assert that "[t]his inconsistency is important in that length of service tends to favor the older employee." Brief of Appellants at 31. In our view, this alleged inconsistency at most shows that Bechtold's and Bertram's subordinates, Chatnuef and Lane, may not have specifically considered all the criteria given them by Bechtold and Bertram. Nonetheless, the final decision rested with Bechtold, and he testified that length of service was considered in every case.[9] We find the other instances of alleged contradictions and inconsistencies to be sufficiently insubstantial such that no reasonable jury could infer age discrimination.

Plaintiffs also make much of the fact that Dover was allegedly building a "team for the future." Plaintiffs assert "[e]ach manager, posed the question of his intentions, admitted that it was to build the best 'team for the future.'" Brief of Appel-

lants at 37. A review of the record, however, reveals that the phrase "team for the future" originated with plaintiffs' counsel.

A. [By Chatnuef] We're talking a lot about criteria here, but really what I was trying to do was keep a good, solid unit together. A good team. I had a good team, and when we scaled it down, if somebody had to go, I wanted to try my best to keep the best people I could to run the organization ...

    ·     ·     ·     ·     ·

Q. [By plaintiffs' counsel] Mr. Chatnuef, in making your decisions for the Dover Corporation as it was affected, you were looking for the best team that you could possibly put together, weren't you?

A. Yes, I was.

    ·     ·     ·     ·     ·

Q. And you looked for the team you were building for the future for Dover, weren't you?

A. Yes.

    ·     ·     ·     ·     ·

Q. And the qualities of that team also included what they could contribute to the future of Dover, didn't it?

A. Certainly.

Q. And in Mr. Lucas' case, he was 63 years old, wasn't he?

A. Yes.

Q. And he didn't have much time to contribute to the future of the Dover team, did he?

A. No. Seven years at the best, I think.

    ·     ·     ·     ·     ·

Q. And in picking your team, the person who could remain with that team the longest was Mr. Moutschka, wasn't it?

---

9. Furthermore, we are not convinced that Lane's testimony reveals that he discarded length of service as a criteria. The relevant interchange with plaintiffs' counsel is as follows:

 Q. And in looking at those supervisors, did you assess them as to how long they had been supervisors?

 A. Not necessarily.

Q. But you did use some kind of measurement to decide who you were going to select, right?
A. Yes.
Q. Did you use skill?
A. Probably not as much as knowledge.
Q. Knowledge, experience on the job?
A. Yes.
R.Vol. V at 423–24.

A. Well. I was really looking for an electrician, but yes, I guess he could have stayed with us longer.

.    .    .    .    .

Q. And you considered the expectations of Dover in terms of how long you were going to need a good team?
A. [By Lane] Well, I don't know exactly that I would say that.
Q. You were building for the future at Dover, were you not?
A. Absolutely.

.    .    .    .    .

A. [By Bertram] To the best of our ability we were trying to keep those supervisors and those employees in general that were the best employees and could carry on the job, and if this ever turned around could bring this company back up to its previous level.
Q. In other words, you were building a supervisory team for Dover for the future with what you forecast was the requisite needs of Dover?
A. Yes ...

R.Vol. IV at 373, R.Vol. V at 395–96, 403, 430, 477–78. While we are aware that it is not our function to assess anew the credibility of witnesses, we find that the statements of Dover's management employees, in response to questions by plaintiffs' counsel, simply fail to raise the reasonable inference that Dover was terminating older employees and retaining younger ones because it wanted to build a team of youthful employees who could contribute long years of service to the company. Rather, the testimony of Dover's employees indicates that Dover was attempting to retain those employees with the broadest range of skills and abilities to shepherd the company through a very difficult economic time.

Plaintiffs also place emphasis on the following interchange between Chatnuef and plaintiffs' counsel:

Q. And Mr. McCully could qualify for early retirement under the Dover pension plan, couldn't he, by virtue of being 61 years of age?
A. Yes.

Q. And Mr. Moutschka could not qualify under the pension plan, could he?
A. No.

R.Vol. V at 403–04. The inference plaintiffs wish us to draw from this testimony is that Dover's termination decisions were based, in part, on who was eligible for early retirement. Both McCully and Lucas testified that they had made inquiries concerning early retirement. While we agree with plaintiffs that employment decisions based on eligibility for early retirement have been held to be age-related, the evidence in this case fails to support even the inference that the decisions to terminate plaintiffs were based in any way on plaintiffs' eligibility for early retirement.

Finally, the statistics concerning all supervisory employees terminated in the reduction in force do not assist plaintiffs' cause. Those statistics show that of the eighteen employees terminated, eleven were under age forty while seven were over that age. While the numbers of employees in the statistical analysis here are quite small, and therefore must be evaluated with caution, what evidentiary value they have suggests that older employees were not treated unfavorably. *See Stendebach v. CPC Int'l, Inc.*, 691 F.2d 735, 738 (5th Cir.1982) ("we are cautious in our use of statistics drawn from small samples...."), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *see also Matthews*, 769 F.2d at 1218 ("Statistics generally are not of significance in age discrimination cases 'unless the disparities in treatment are quite large.'") (quoting *Kephart v. Inst. of Gas Technology*, 630 F.2d 1217, 1224 app. (7th Cir.1980) (per curiam), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)).

In short, while plaintiffs may disagree with Dover's evaluation of who was the best qualified employee to fill the consolidated positions, as long as a jury had no reasonable basis for determining that age was a determining factor in those evaluations, the jury verdict for plaintiffs cannot stand. This court will not second guess business decisions made by employers, in the absence of some evidence of impermis-

sible motives. *See Branson,* 853 F.2d at 772 ("As courts are not free to second-guess an employer's business judgment, this assertion [that plaintiff was equally or more qualified than the person retained] is insufficient to support a finding of pretext."); *Jorgensen v. Modern Woodmen of America,* 761 F.2d 502, 505 (8th Cir.1985) ("[t]he ADEA is not intended to be used as a means of reviewing the propriety of a business decision on the part of [an employer]"); *Kephart,* 630 F.2d at 1223 app. ("[t]he [ADEA] ... was not intended as a vehicle for judicial review of business decisions."). After carefully reviewing the entire record and even indulging all inferences in plaintiffs' favor, we hold that no reasonable juror could have found that plaintiffs' terminations were impermissibly based upon age. We therefore AFFIRM the grant of judgment n.o.v. to Dover and the dismissal of plaintiffs' claims.