**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ART MANNING,

    Plaintiff-Appellee,

v.

McGRAW-HILL, INC.,

    Defendant-Appellant.

_____

ART MANNING,

    Plaintiff-Appellant,

v.

McGRAW-HILL, INC.,

    Defendant-Appellee.

No. 99-1010

No. 99-1130

(D.C. No. 94-WM-1697)

(D. Colo.)

No. 99-1029

(D.C. No. 94-WM-1697)

(D. Colo.)

---

**ORDER AND JUDGMENT** [*]

---

Before **BALDOCK, KELLY,** and **BRISCOE** , Circuit Judges.

McGraw-Hill, Inc., appeals the district court's denial of its Federal Rule of

Civil Procedure 50 motion for judgment as a matter of law after a jury found it

willfully discriminated against Art Manning on the basis of age, in violation of

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the Age Discrimination in Employment Act.  29 U.S.C. § 621 *et seq.*  McGraw-Hill also appeals the damages award and the award of Manning's attorney fees.  Manning cross-appeals the district court's refusal to award him front pay.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291, reverse the district court's denial of McGraw-Hill's Rule 50 motion, and dismiss the cross-appeal as moot.

I.

Art Manning was a sales account executive at television station KMGH-Channel 7 in Denver, Colorado, which was owned by McGraw-Hill, Inc.  Manning's job was to sell advertising on KMGH and to service existing advertising accounts.  Manning worked for KMGH from 1979 until 1993.  In January 1991, John Proffitt became general manager of KMGH.  In February 1992, James Sieke became the local sales manager of KMGH, making him Manning's supervisor.  Sieke reported to Chris Westerkamp, who became general sales manager of KMGH in June 1991.

Manning serviced the station's large advertising accounts with Toyota, Lexus, and Coca-Cola.  Starting in 1992, Sieke and Westerkamp became concerned about Manning's performance, and particularly about the station's share of business from Toyota, Lexus, and Coca-Cola.  Sieke testified that because KMGH's ratings were low it was very important for KMGH to have better salespeople than its competition.  In March 1992, Sieke discovered that

2

Manning had negotiated a second quarter 1992 advertising rate for Toyota that was significantly below regular station rates, without prior management approval. Sieke and Westerkamp decided to take the Toyota, Lexus, and Coca-Cola accounts from Manning. Sieke testified he took the Toyota account from Manning because of the unapproved rate and because of Manning's overall performance in 1991, and he took the Coca-Cola account because of Manning's underperformance on the account. Megan Back, who took over the Toyota account, negotiated a 22% share of Toyota's television advertising for the third quarter in 1992 when Manning had negotiated a 4% share for the same time period the previous year. In October 1992, the station share of Toyota increased to 24%, compared to Manning's 7% for October 1991.

Sales executives at KMGH set quarterly goals for themselves. Sieke testified that Manning did not achieve some of his fairly simple first quarter 1992 goals. Westerkamp gave Manning a performance score of 5.5 out of 10, which was below average for sales executives. Manning also failed to meet his second quarter 1992 goals, receiving a performance score of 4, the lowest of any sales executive. Sieke testified that Manning did not appear to be concerned about his low performance scores. On July 15, 1992, Westerkamp addressed a memo to Manning setting out the steps necessary for Manning to improve his performance and stating if Manning's performance did not improve significantly he could be

3

discharged.  Manning received a performance score of 6 for his third quarter 1992 goals, still the lowest of any sales executive.  He also did not meet his fourth quarter 1992 goals, receiving a performance score of 4.  Manning did not object to any of these scores when they were given or claim they were the result of age discrimination.

On December 29, 1992, Westerkamp issued a letter of final warning to Manning.  The letter included goals for Manning to complete in the first quarter of 1993 and advised Manning that failure to meet the goals would result in his termination.  Manning filed a written response alleging Westerkamp was discriminating against him on the basis of his age and requesting a meeting to revise the goal expectations.  On December 31, 1992, Manning filed a charge of age discrimination with the E.E.O.C.  On January 5 and January 11, 1993, Westerkamp and Sieke met with Manning to discuss and revise his first quarter 1993 goals.  On January 19, 1993, Westerkamp sent Manning a memo detailing why Manning's presentation writing skills were inadequate.  On January 25, 1993, Sieke sent Manning a four-page memo outlining his progress on his first quarter 1993 goals.  In February 1993, Manning filed a charge of retaliation with the E.E.O.C.  On March 11, 1993, Sieke sent Manning a follow-up memo addressing Manning's progress on his first quarter 1993 goals.

Manning did not meet his first quarter 1993 goals.  On March 31, 1993,

4

Westerkamp discharged Manning. Manning was 49 years old at the time. Westerkamp denied that age was a factor in Manning's termination, stating that he had no reason to fire someone because of his age if he was a good salesperson. Manning testified that during his quarterly goal reviews Sieke made comments about his age. Manning claimed Sieke said he "was just about ten years behind the times," that "[w]e don't do things the good-old-boy way anymore," and that he had "a whole room of young, aggressive salespeople out there." Aplt. App. I at 278. Sieke denied making any of these statements.

Manning claimed that KMGH discriminated against other employees on the basis of age. Lawrence Grall worked at KMGH for ten years, eight years as a sales executive and two years as local sales manager. He believed he was discharged because Proffitt and Westerkamp were bringing in a younger group of managers. Proffitt testified that Grall was discharged because of a change in job requirements and his lack of performance. Leonard Marsh worked at KMGH from 1978 to1992. Marsh was discharged because of a reduction in force, but he believed it was because of his age. Of the nine sales executives hired from 1990-1995, all except one were under the age of 40. Of the four individuals who left the sales department since 1991, all were over the age of 40. These individuals were Manning, Grall, Marsh, and Peter Remmert. Sieke testified that other sales executives over the age of 40 worked at KMGH while Manning was there and

5

KMGH had hired employees over the age of 40 since Manning left. Tausca Schillaci and William Goddard, sales executives at KMGH, were over the age of 40 and both testified they did not believe they were subjected to age discrimination.

On June 28, 1994, Manning filed a complaint in Colorado state court alleging McGraw-Hill violated the Age Discrimination in Employment Act (ADEA) and the Colorado Anti-Discrimination Statute. [1] McGraw-Hill removed the action to federal court under 28 U.S.C. § 1446. On May 5, 1997, a jury found that McGraw-Hill willfully discriminated against Manning on the basis of age and awarded him back pay of $324,900. The jury concluded that McGraw-Hill did not prove Manning failed to mitigate his damages. The jury further concluded that McGraw-Hill did not retaliate against Manning for filing charges of discrimination with the E.E.O.C. On May 8, 1998, the district court determined that Manning was entitled to liquidated damages in an amount equal to the award of back pay, but that Manning was not entitled to prejudgment interest or front pay.

On December 8, 1998, the district court denied McGraw-Hill's renewed

[1]Manning also alleged breach of contract, promissory estoppel, and intentional infliction of emotional distress/outrageous conduct. He does not appeal the district court's grant of McGraw-Hill's motion for summary judgment on these claims.

Rule 50 motion for judgment as a matter of law, rejecting its arguments on liability, willfulness, and attorney fees. The court granted the motion on damages, requiring Manning to elect between a remittitur reducing the damage award against McGraw-Hill or a new trial on the issue of damages. Manning accepted the remittitur, reducing his damage award to $401,000. The district court determined that Manning was entitled to attorney fees as the prevailing party, pursuant to 29 U.S.C. § 216(b), and awarded fees at the rate of $175 per hour, for a total of $166,215.43.

II.

The district court denied McGraw-Hill's Rule 50 motion for judgment as a matter of law. We review the district court's denial of a motion for judgment as a matter of law de novo, applying the same legal standard as the district court. Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1268 (10th Cir. 2000) (citing Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir.1999)). A party is entitled to judgment as a matter of law only if the "evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. (internal quotations omitted). In reviewing the record, we "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." Id. Judgment as a matter of law is appropriate only if there is no legally sufficient evidentiary basis for a claim under the controlling

7

law.  Id.  We consider the evidence, and any inferences drawn therefrom, in favor of the non-moving party.  Id.

Under the Age Discrimination in Employment Act (ADEA), it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff may prove his ADEA claim through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  See Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995).  Under the McDonnell Douglas analysis, the plaintiff has the initial burden of establishing a prima facie case of age discrimination.  The burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action, then shifts back to the plaintiff to prove the defendant's stated reason was a pretext for unlawful discrimination.  Jones v. Denver Post Corp., 203 F.3d 748, 752-53 (10th Cir. 2000) (citing McDonnell Douglas, 411 U.S. at 802-04).

However, after "a full trial on the merits, the sequential analytical model adopted from McDonnell Douglas . . . drops out" and this court is "left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against him on the basis of age."  Doan v. Seagate Tech., Inc., 82 F.3d 974, 977 (10th Cir.

8

1996). There is no dispute that adverse employment action was taken against Manning. The issue is whether there was sufficient evidence to support the jury's finding that Manning was discharged because of his age.

A plaintiff bringing a claim under the ADEA must establish that his age was a "determining factor" in the employer's decision. Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996) (citing Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988)). "The plaintiff need not prove that age was the sole reason for the employer's acts, but must show that age made the difference in the employer's decision." Id. (internal quotations omitted).

Manning contends three statements by Sieke evidenced age discrimination: (1) that Manning "was just about ten years behind the times," (2) that "[w]e don't do things the good-old-boy way anymore," and (3) that "I've got a whole room of young, aggressive salespeople out there." Aplt. App. I at 278. Even if we accept that these statements were made, which Sieke denied, we conclude they are insufficient to establish Manning was discharged because of his age. "Age-related comments referring directly to the plaintiff can support an inference of age discrimination, but 'isolated [or] ambiguous comments' may be . . . too abstract to support such an inference." Stone v. Autoliv ASP, Inc, 210 F.3d 1132, 1140 (10th Cir. 2000) (quoting Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994)). "A plaintiff must demonstrate a nexus exists

9

between the allegedly discriminatory statement and the company's termination decision . . . and therefore 'that age actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome.'" Id. (quoting Rea v. Martin Marietta Corp. , 29 F.3d 1450, 1455 (10th Cir. 1994)). Manning did not prove any nexus between Sieke's statements and McGraw-Hill's decision to fire him. See Lindsey v. Baxter Healthcare Corp. , 962 F.2d 586, 588 (7th Cir. 1992) (stating that "[n]o weight can be attached to . . . 'good old boys,' [because] any competent user of the English (or rather the American) language knows that to be a good old boy one need not be old, or for that matter good"). Further, age-related comments "by non-decisionmakers are not material in showing the [defendant's] action was based on age discrimination." Cone, 14 F.3d at 531. Westerkamp and Proffitt, not Sieke, were the decision-makers in employment decisions at KMGH.

Manning also alleged that other employees over the age of 40 were discharged because of their age and he presented the testimony of Grall and Marsh. McGraw-Hill representatives stated that Grall and Marsh were discharged for non-age related reasons and Manning presented no other evidence of age discrimination in the termination of those employees. Further, at least two sales executives over the age of 40 were still employed at KMGH at the time of trial, negating Manning's theory of widespread, age-related firings at the station.

10

The evidence presented by Manning did not establish a pattern of age discrimination at KMGH. See Vanasco v. National-Louis Univ., 137 F.3d 962, 967 (7th Cir. 1998) (stating that "evidence of scattered decisions either favoring or disfavoring older employees reveals little about the University's processes and is certainly insufficient, without more, to prove a pattern of age discrimination").

Manning relies on his past evaluations of acceptable performance and letters of commendation from 1989 to establish that his discharge for poor performance was pretextual. In 1989, Manning received an evaluation of "[p]erformance substantially and consistently exceeded expectations and was clearly exceptional." Aplt. App. II at 482. "Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992). For 1990, Manning's evaluation stated that his "[p]erformance was below expectations." Aplt. App. II at 488. This was before Proffitt, Westerkamp, or Sieke became Manning's supervisors and superiors. Manning failed to meet his self-determined goals and received poor performance reviews for all four quarters of 1992 and the first quarter of 1993. He received numerous warnings regarding his poor performance and detailed suggestions of how to improve his performance, but his performance did not improve. Although Albert Knittle, Thomas McCarthy, and

11

Mary Beth Lynch-McGrath, clients of Manning's, testified that Manning was one of their best sales representatives, this does not contradict McGraw-Hill's belief that Manning failed to meet expectations.

McGraw-Hill's stated reasons for terminating Manning's employment were poor performance and failure to meet his quarterly goals for over a year. "This court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." Lucas, 857 F.2d at 1403-04. Manning did not dispute the accuracy of his performance reviews when they were given. See Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1287 (4th Cir. 1985) (stating that Title VII and §§ 1981 and 1983 do not "require an employer to adopt a life of economic altruism and thereby immunize protected class members from discharge or demotion despite their poor performance and inadequate qualifications"). Manning failed to show that age was a determining factor in the decision to fire him or that McGraw-Hill's stated reasons for terminating his employment were pretextual. We conclude that the district court erred in denying McGraw-Hill's Rule 50 motion for judgment as a matter of law. [2]

[2]Because we conclude there was insufficient evidence to support the jury verdict finding McGraw-Hill discriminated against Manning on the basis of age, the issues of whether McGraw-Hill acted willfully, whether the damage award was excessive, whether Manning mitigated his damages, whether the district court's award of attorney fees to Manning was proper, and whether the district court erred in denying Manning front pay are moot.

III.

The district court's denial of McGraw-Hill's Rule 50 motion is REVERSED and the case is REMANDED for entry of judgment as a matter of law for McGraw-Hill on Manning's age discrimination claims. The district court's award of attorney fees to Manning is REVERSED. The cross-appeal is DISMISSED as moot.

Entered for the Court

Mary Beck Briscoe
Circuit Judge