Cynthia CANADY, Plaintiff,

v.

**GENERAL MOTORS CORPORATION,**
Defendant.

No. CIV.A.03–2326–CM.

United States District Court,
D. Kansas.

Oct. 25, 2004.

See, also, 2004 WL 3322326.

Cynthia F. Canady, Kansas City, MO, pro se.

Michael A. Williams, Lathrop & Gage, LC, Kansas City, MO, for Defendant.

### *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

Plaintiff Cynthia Canady has brought this lawsuit against her employer, General Motors Corporation (GM),[1] alleging race and age discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA). Specifically, plaintiff alleges GM violated these laws when it refused to return her to work. This matter is before the court on Defendant General Motors Corporation's Motion for Summary Judgment (Doc. 22).

### I. Facts

As a preliminary matter, the court notes that plaintiff's response brief fails to adequately respond to, much less controvert, GM's statement of facts. Plaintiff simply sets forth twenty eight factual assertions, most of which contain no citation to the record. Local Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's fact that is disputed." D. Kan. Rule 56.1(b)(1). Plaintiff has failed to comply with these requirements. Thus, where allegedly disputed facts are not directly controverted by evidence contained in the record, the court considers those facts uncontroverted pursuant to Federal Rule of Civil Procedure 56. However, the court will deem GM's facts controverted to the extent that plaintiff's own facts fairly meet the substance of GM's statement of facts and are supported by competent evidence.

Plaintiff is African–American and was born on June 8, 1939. Plaintiff began working as an hourly employee for GM on September 8, 1972 in the Leeds plant located in Kansas City, Missouri. GM closed the Leeds plant in April 1987, and plaintiff was laid off by GM. In May 1987, plaintiff filed a workers' compensation claim alleging a work-related injury to her back. Plaintiff applied for and received social security disability benefits from the government from May 1987 through January 1997. Plaintiff applied for and received a disability benefits package from GM based on her back injury.

Pursuant to the terms of the applicable collective bargaining agreement, GM recalled plaintiff to work at GM's Fairfax assembly plant in Kansas City, Kansas in September 1994. On March 10, 1998, plaintiff reported that she slipped on ice in the plant parking lot, injuring her hip and pelvic regions. Plaintiff filed a workers' compensation claim related to this injury.

---

1. Plaintiff also filed suit in this court against United Auto Workers Local 31 in *Canady v.* *UAW Local 31*, Case No. 03–2395.

Plaintiff returned to work on May 11, 1998 and was referred to the Fairfax plant medical department for assignment.[2] GM assigned plaintiff to a light duty position from May 11, 1998 until September 1998. After plaintiff completed her light duty assignment, plaintiff's supervisor assigned her to jobs within her medical restrictions. However, plaintiff complained to Joe Biondi, ADAPT Representative, that she was physically unable to work in the positions assigned by her supervisor. Biondi had the plant medical director review the job assignments and, based upon that review, informed plaintiff that the positions complied with her medical restrictions.

On April 23, 1999, a GM supervisor notified plaintiff she was subject to disciplinary action for faulty workmanship. Instead of receiving the punishment, plaintiff walked off her job, without permission from any manager or supervisor, and did not return to the Fairfax plant until October 1, 2001.

The same day plaintiff walked off the job, plaintiff went to Dr. Fred Fayne, plaintiff's psychiatrist, and he submitted documentation to GM releasing plaintiff from work on April 23, 1999 and stating that she should not return to work due to stress. Dr. Fayne diagnosed plaintiff as having major depression and did not release plaintiff to return to work based on her mental health restrictions. GM then referred plaintiff to Dr. Fernando Egea for a second opinion. Dr. Egea diagnosed plaintiff with "bipolar disorder with depression and anxiety."

On or about July 13, 1999, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging GM refused to accommodate her medical restrictions because of her race, gender and an alleged disability. On September 6, 2001, the Kansas Human Rights Commission (KHRC) issued a no probable cause determination, and the EEOC issued a Notice of Right to Sue. Plaintiff did not institute any legal proceedings based upon this Notice of Right to Sue.

On or about September 9, 2001, without communicating with any manager or supervisor at the Fairfax facility, plaintiff completed and signed an "Application for Total and Permanent Disability Benefits." In her application, plaintiff certified that she was unable to return to work at GM or any other employer because of "stress." Plaintiff then met with the plant medical department on October 1, 2001, regarding plaintiff's return to work. The plant medical department deferred any decision related to returning plaintiff to work until January 2002.

In the mean time, on November 1, 2001, Dr. Fayne provided GM with a "Statement of Employee's Physician for Total and Permanent Disability Benefits." Dr. Fayne certified that plaintiff was permanently and totally disabled from working because of her "major depression." Dr. Fayne also certified that plaintiff would "never" be able to return to gainful employment of any kind.

On December 20, 2001, the plant medical director agreed with Dr. Fayne's findings, and plaintiff was authorized to receive total and permanent disability benefits from

---

**2.** Pursuant to GM's workers' compensation policy, employees with work-related injuries are sent to the plant medical department for verification of their restrictions. Verification is then forwarded to an Accommodating Dis-Abled People in Transition ("ADAPT") placement representative. Through ADAPT, the Fairfax plant attempts to place employees with injuries or impairments in jobs that meet their restrictions. If ADAPT is unable to place an employee in a position that meets their restrictions, the employee is placed on a paid medical leave of absence.

GM from April 23, 1999 through the present. Plaintiff also applied for and received social security disability benefits from the government beginning on April 23, 1999 and continuing today.

Plaintiff returned to the GM facility for the last time on January 1, 2002. At that time, plaintiff was informed by the plant medical department and ADAPT that she was not eligible to return to work due to her voluntary application for medical retirement benefits. Plaintiff has not returned to the Fairfax plant or spoken with GM management since that time.

On November 6, 2002, plaintiff filed a Charge of Discrimination with the EEOC.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

The court acknowledges that plaintiff appears pro se and her response is entitled to a somewhat less stringent standard than a response filed by a licensed attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However, this does not excuse plaintiff from the burden of coming forward with evidence to support her claims as required by the Federal Rules of Civil Procedure and the local rules of this court. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642,

649 (10th Cir.1988). Even a pro se plaintiff must present some "specific factual support" for her allegations. *Id.*

## III. Discussion

### A. Exhaustion of Administrative Remedies

■■■■ Exhaustion of administrative remedies is a prerequisite to instituting a Title VII or ADEA action in federal court. *Khader v. Aspin,* 1 F.3d 968, 970 (10th Cir.1993). A complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event to ensure that the claim may be filed with the EEOC within the 300–day limit set forth in Title VII. *E.E.O.C. v. Commercial Office Prods. Co.,* 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988); *Waller v. Consol. Freightways Corp.,* 767 F.Supp. 1548, 1558 (D.Kan.1991). In a deferral state such as Kansas, a plaintiff must file Title VII and ADEA discrimination charges within 300 days after the alleged discriminatory act occurred. 42 U.S.C. § 2000e–5(e)(1) (Title VII); 29 U.S.C. § 626(d)(2) (ADEA); *Peterson v. City of Wichita,* 888 F.2d 1307, 1308 (10th Cir.1989).

■■■ The Supreme Court has held that the trigger of the limitations period in which to file an EEOC charge is the date an employee first learns of the alleged discrimination, even if the effects of the discrimination become more painful at a later date. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431, (1980); see *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994) (holding discrimination claim accrues on the date an employee is notified of adverse employment decision).

■■■ In this case, plaintiff met with GM representatives both in October 2001 and on January 1, 2002. As early as October 2001, and at the latest January 1, 2002, GM informed plaintiff that she was not eligible to return to work. However, plaintiff waited and filed her charge of discrimination with the EEOC and KHRC on November 6, 2002, 311 days after her last contact with GM management, and more than three and a half years after her last day of active employment. As such, all the alleged acts of discrimination are barred because plaintiff failed to timely file a charge of discrimination, thereby failing to exhaust her administrative remedies.

### B. Race Discrimination Claim

Notwithstanding the fact that plaintiff failed to timely file her charge of discrimination, the court will consider plaintiff's discrimination claims on the merits.

■■■ To determine whether plaintiff can survive summary judgment, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802–05, 93 S.Ct. 1817. Under *McDonnell Douglas,* in order to survive summary judgment, plaintiff must first establish a prima facie case of race discrimination. To establish a prima facie case of disparate treatment, plaintiff must show that 1) she belongs to a protected class, 2) she suffered an adverse employment action, and 3) defendant treated similarly situated employees differently. *Trujillo v. Univ. of Colo. Health Sciences Center,* 157 F.3d 1211, 1215 (10th Cir. 1998). If the plaintiff carries that burden, the defendant must then articulate a facially nondiscriminatory reason for the challenged employment action. If the defendant makes such a showing, the burden reverts to the plaintiff to prove the proffered nondiscriminatory reason is pretextual.

■■■ Here, plaintiff alleges GM discriminated against her based upon her race by not returning her to work and forcing her to retire. However, the documents and

uncontroverted facts establish plaintiff *herself requested* disability retirement from MetLife, GM's third party insurer, prior to meeting with any GM manager or supervisor. Additionally, both plaintiff and her personal physician certified that she was incapable of working because of her "major depression." In fact, plaintiff and her physician certified plaintiff would *never* be able to return to work in the open labor market. MetLife's accepted plaintiff's voluntary request for disability benefits, after she had been receiving similar benefits from the federal government for over two and a half years. Plaintiff has wholly failed to carry her burden of establishing a prima facie case of race discrimination, especially in light of plaintiff's admission that she is not aware of any employee who suffered from impairments similar to hers and was treated more favorably.

■ Moreover, even if plaintiff could establish a prima facie case of race discrimination, plaintiff cannot demonstrate that GM's stated legitimate reasons for its actions are pretextual. GM proffers that plaintiff's request for permanent disability retirement was accepted by MetLife after appropriate certification was received from plaintiff, her physician, and the Fairfax plant medical department. GM paid plaintiff benefits for each day she was unable to work due to the doctor's certification. Thus, GM having carried its burden of articulating a legitimate, nondiscriminatory reason for its actions, plaintiff is now required to set forth a genuine issue of material fact that GM's explanation is pretextual.

As noted above, MetLife accepted plaintiff's request for permanent and total disability only after she completed the required paperwork and submitted the certification documents. Plaintiff concedes she understood the process and had the option to file a grievance if she felt she was capable of returning to work at GM. Plaintiff's claim that GM's actions were based on racial animus is utterly baseless, where GM merely complied with her request and the certification from her personal physician. GM is entitled to summary judgment on plaintiff's race discrimination claim.

## C. Age Discrimination Claim

■ Plaintiff claims that she was terminated because of her age. As with Title VII claims, the court applies the same *McDonnell Douglas* burden shifting framework to § 1981 and ADEA claims. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir.1991); *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988).

■ To establish a prima facie case of age discrimination, plaintiff must show that 1) she was a member of the protected class at the time of the discharge; 2) she was performing satisfactory work; 3) she was discharged; and 4) her position was filled by a younger person. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir.1994).

■ Here, the record is completely devoid of any evidence that plaintiff was denied a position for which she was qualified or that a younger employee replaced her. Specifically, plaintiff and Dr. Fayne certified that plaintiff had been unable to work at GM or in the open labor market since April 1999. Plaintiff and Dr. Fayne also certified that she could *never* work at GM or in the open labor market again. As detailed above, MetLife accepted plaintiff's request for permanent and total disability benefits after plaintiff was on disability leave for over two and a half years. Based on plaintiff's testimony and the certification documents in the record, it is clear plaintiff cannot meet the standards to establish a claim under the ADEA's requirements.

Moreover, as also set forth above, plaintiff has failed to produce any evidence that GM's stated legitimate reasons for its actions are pretextual. The court grants GM summary judgment on plaintiff's age discrimination claim.

**IT IS THEREFORE ORDERED** that Defendant General Motors Corporation's Motion for Summary Judgment (Doc. 22) is granted in its entirety.