**Lynette E. KEEHNER, Individually and as Executrix of the Estate of Steven Dennis Shirley, Deceased, Plaintiff,**

v.

**Charles DUNN a/k/a/ "Chuck" Dunn, Individually and as Sheriff of Clay County, Kansas, and Clay County, Kansas, Defendants.**

**No. 05–2136–JAR.**

United States District Court, D. Kansas.

Dec. 16, 2005.

Lynette E. Keehner, Monticello, NY, pro se.

David S. Baker, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, KS, for Defendants.

*MEMORANDUM ORDER AND OPIN-ION GRANTING DEFENDANTS' MO-TION FOR SUMMARY JUDGMENT*

ROBINSON, District Judge.

Steven Dennis Shirley was detained at the Clay County Jail in Clay Center, Kansas at the time of his death. His sister, Lynette E. Keehner, brings this action individually and as executrix of her brother's estate, alleging violations of her brother's Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 along with negligence and wrongful death claims under Kansas law. Plaintiff seeks monetary damages under § 1983 against the Sheriff of Clay County, Kansas, Charles "Chuck" Dunn, in his individual and official capacities. Plaintiff also asserts an official capacity claim against Clay County, Kansas. The Court now considers defendants' Motion for Summary Judgment (Doc. 8), where they argue: (1) Dunn enjoys qualified immunity from suit under § 1983 in his individual capacities; (2) summary judgment is appropriate on plaintiff's official capacity claims because the defendants were not deliberately indifferent to Steven Dennis Shirley's medical or psychological needs; and (3) plaintiff's claims under Kansas law fail because plaintiff has not complied with the statutory requirements to bring a claim under the Kansas Tort Claims Act (KTCA).

## I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for

---

1. Fed.R.Civ.P. 56(c).

the nonmoving party.[2] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[3]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[4] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[5] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[6] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[7] The Court must consider the record in the light most favorable to the nonmoving party.[8]

Defendants filed their summary judgment motion on July 11, 2005. Plaintiff's response was due August 3, 2005. Plaintiff twice requested an extension of time to file her response. On November 4, 2005, this Court granted plaintiff one final extension of time to file her response by November 28, 2005. To date, plaintiff has not filed a response to defendants' summary judgment motion. The District of Kansas Local Rules provide that a party's failure to file a timely response constitutes a waiver of the right to file a response, except upon a showing of excusable neglect.[9] Plaintiff has not attempted to make this showing; therefore, the Court finds that plaintiff has waived her ability to file a response.

■ Although plaintiff has not responded to defendants' motion, this alone does not make summary judgment proper, for plaintiff's burden to respond arises only if the motion is properly supported in the first instance.[10] "Accordingly, summary judgment is appropriate under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)."[11] If the evidence presented by the moving party does not satisfy this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented.*"[12] Thus, if a nonmoving party fails to respond to a motion for summary judgment, the Court must first examine the moving party's submission to determine if it has met its initial burden of

---

2. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3. *Id.* at 251–52, 106 S.Ct. 2505.

4. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

6. *Id.*

7. *Id.*

8. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

9. D. Kan. R. 7.4.

10. *See Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir.2002) (stating that " '[n]o defense to an insufficient showing is required' " from the nonmoving party (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970))).

11. *Id.* at 1194.

12. *Id.* (citations omitted) (emphasis in original).

demonstrating that no material issues of fact remain for trial and that the moving party is entitled to judgment as a matter of law.[13]

Additionally, in a *pro se* case, the *pro se* litigant's pleadings are to be liberally construed and are held to a less stringent standard.[14] This rule requires the Court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.[15] The Court is not authorized to become the advocate for the *pro se* litigant.[16] "Despite the liberal construction afforded *pro se* pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[17] Moreover, plaintiffs are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se.*[18] *Pro se* litigants must follow rules of procedure, including local rules.[19] Plaintiff's *pro se* status, in and of itself, does not prevent this Court from granting summary judgment.[20]

## II. Uncontroverted Facts [21]

Steven Dennis Shirley ("Shirley") was arrested by the Clay County, Kansas, Sheriff's Office on March 18, 2003 for suspected manufacturing, possession and control of a controlled substance, hallucinogenic mushrooms. Shirley was booked into the Clay County Jail on the day of his arrest, and his bond was set at $25,000. On April 8, 2003, shortly after midnight, Shirley was found dead in his cell at the Clay County Jail. His body was discovered in an upright position on the lower bunk of his cell's bunk bed. His feet were on the floor, and a twisted bed sheet was wrapped around his neck. According to Sheriff Dunn, "[i]t appeared that after tying one end of the sheet to the top bunk, Shirley fashioned a loop in the other end and after tying the knot, he put his head and neck in the loop and then twisted around until it was tight enough to cut of his breathing."[22]

Since at least 1995, the Clay County Jail has followed a policy when booking individuals into the jail. The policy requires the booking officer to ask the detainee a series of questions, and then to complete a form called a "Medical Screening Form and Consent for Treatment" ("Screening Form") with the detainee's answers and the booking officer's personal observations.

13. *Id.* at 1194–95.

14. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

15. *Id.* at 1110.

16. *Id.*

17. *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991).

18. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 750, 130 L.Ed.2d 650 (1995).

19. *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992), *cert. denied,* 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993); *Campbell v. Meredith Corp.,* 260 F.Supp.2d 1087, 1097 n. 10 (D.Kan.2003).

20. *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992).

21. D. Kan. 56.1(a) provides that "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." By failing to file a response to defendants' summary judgment motion, "[plaintiff] waived the right to file a response and confesse[d] all facts asserted and properly supported in the motion." *Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 (10th Cir. 2002). Thus, to the extent defendants' factual allegations find support in the record, the Court has accepted them as true.

22. (Doc. 9, Attach. 2 at ¶ 4.)

All personnel working in the Clay County Jail are instructed and trained on this policy, along with the other Clay County Sheriff's Office policies concerning jail operation. The booking officer followed this policy when Shirley was booked into the Clay County Jail. According to his Screening Form, Shirley answered "no" to the following questions: "Have you ever attempted suicide?"; "Have you ever thought about harming yourself?"; "Have you ever been treated for depression or other emotional condition?"; and "Do you have any condition we should know about?" Additionally, the Screening Form asks the booking officer, "Does the inmate behavior suggest a risk of suicide?" To this question, the booking officer who booked Shirley into the Jail answered, "no."

The Clay County Sheriff's Office, since at least 1995, has followed a policy that if an individual appears to be ill or in need of psychological attention at the time he arrives at the jail for booking, the booking officer is to refuse the individual admission to the jail and is to obtain appropriate treatment for the individual. Sheriff Dunn contends that based on all of the information provided to him, Shirley was not ill nor in need of psychological attention when he was booked into the Clay County Jail. Since at least 1995, the Clay County Sheriff's Office has also followed a policy of providing immediate medical and/or psychological attention once an inmate is admitted to the jail and that inmate indicates, either through actions or words, a desire to injure himself or to commit suicide. Additionally, the Clay County Sheriff's Office provides immediate medical and/or psychological attention to any individual having a sudden onset of bizarre behavior. Sheriff Dunn contends that he

had no information of any kind that Shirley had ever exhibited any suicidal or bizarre behavior prior to the discovery of his body on April 8, 2003. He further asserts that he had no information that Shirley had ever attempted to harm or kill himself prior to Shirley's death. Sheriff Dunn also contends that he had no information that Shirley ever made any statements that would indicate in any way that Shirley had a desire to hurt himself. Additionally, both defendants contend that they have never received nor been served with notice of a claim by plaintiff, or any other person, arising out of the death of Shirley or any of the events alleged in this lawsuit.

## III. Discussion

### A. Section 1983 Claims

#### 1. Individual Capacity Claims

Under § 1983, a suit against a government official may be made to impose individual liability for actions taken under color of state law.[23] In order to establish individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[24] A defendant sued in his individual capacity may be able to assert personal immunity defenses such as qualified immunity.[25]

Upon a defendant's assertion of a qualified immunity defense in a summary judgment motion, plaintiff has a two-part burden. Plaintiff must come forward with facts or allegations that the defendant's conduct was a violation of a clearly established constitutional or statutory right at the time of its occurrence and that the violated right was "clearly established such that a reasonable person in the defendant's

---

**23.** *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

**24.** *Id.* at 165, 105 S.Ct. 3099.

**25.** *Id.*

position would have known the conduct violated the right."[26] The issue of immunity is a legal one and the Court may not avoid it by framing it as a factual issue.[27] The Supreme Court counsels that before addressing the issue of qualified immunity, the Court must first consider: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[28]

In this case, plaintiff alleges Eighth and Fourteenth Amendment violations against Dunn in his individual capacity. Although the Eighth Amendment only applies to convicted inmates, the Fourteenth Amendment due process clause provides for the same degree of medical attention to pretrial detainees as the Eighth Amendment provides for inmates. The Tenth Circuit has stated:

> [W]e conclude that in this circuit a prisoner, whether he be an inmate in a penal institution after conviction or a pre-trial detainee in a county jail, does not have a claim against his custodian for failure to provide adequate medical attention unless the custodian knows of the risk involved, and is 'deliberately indifferent' thereto.... And the same standard applies to a claim based on jail suicide, i.e., the custodian must be 'deliberately indifferent' to a substantial risk of suicide.[29]

Therefore, in order to allege a violation of Shirley's constitutional rights by failing to protect him from suicide, plaintiff must prove that Dunn was "deliberately indifferent" to a substantial risk of suicide.

Deliberate indifference is a higher standard than either simple negligence or heightened negligence.[30] The subjective component of the deliberate indifference standard requires that the official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[31] Even if the defendant lacks actual knowledge of a substantial risk of harm, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[32]

> While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him ... he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist .... It is not enough merely to find that a reasonable person would have known, or that the defendant should have known.[33]

"[I]f a risk is obvious so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it."[34] The Court will evaluate the thresh-

**26.** *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997); *see Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988).

**27.** *Lawmaster,* 125 F.3d at 1347.

**28.** *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Gonzales v. Martinez,* 403 F.3d 1179, 1186 (10th Cir. 2005).

**29.** *Barrie v. Grand County, Utah,* 119 F.3d 862, 869 (10th Cir.1997).

**30.** *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407–10, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

**31.** *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir.1998); *see Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

**32.** *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970.

**33.** *Id.* at 843 n. 8, 114 S.Ct. 1970.

**34.** *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir.2005) (quoting *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir.2001)).

old question of whether plaintiff alleges a constitutional violation under this standard with regard to defendant Dunn.

 Plaintiff alleges in her Complaint: (1) that Dunn was deliberately indifferent to the substantial risk that Shirley would commit suicide in his jail cell, (2) that Dunn failed to properly monitor prisoners for suicidal behavior, and (3) that he left Shirley unattended, allowing him to commit suicide. Defendants argue that Dunn had no knowledge of a substantial risk of suicide by Shirley and that there was no obvious substantial risk present. Under the two-prong deliberate indifference standard, plaintiff must establish that Dunn was aware of a substantial risk that Shirley would imminently commit suicide before the Court may address whether he responded to that threat adequately.[35] Shirley's behavior, through both words and actions, never demonstrated to anyone at the jail, including defendant Dunn, that Shirley may have had a desire to injure himself or to commit suicide. Three weeks before his suicide, when Shirley was booked into the Clay County Jail, Shirley told the booking officer that he had never attempted suicide, that he had never thought of harming himself, and that he had never been treated for depression or any other emotional condition. The booking officer did not observe any suicidal or bizarre behavior by Shirley that would suggest that he may have been a suicide risk. Further, during the three weeks he spent at the Clay County Jail, neither Dunn nor any of the jail personnel witnessed Shirley exhibiting any behavior that would indicate that Shirley was a suicide risk. Because Dunn lacked personal knowledge of a substantial risk of suicide by Shirley under the first prong of the deliberate indifference standard, plaintiff has failed to support her first allegation against Dunn. As to plaintiff's second and third allegations against Dunn, plaintiff claims fail as well because the Clay County Jail employed several policies to screen detainees and to discover behavior indicating an immediate need for medical or psychological treatment. Liberally construing plaintiff's Complaint, the Court views her allegations against Dunn for failing to screen and monitor detainees as claims alleging his failure to train jail personnel, who were responsible for such tasks. Thus, as Clay County Sheriff, any liability attributed to Dunn in his individual capacity must be through his capacity as a supervisor. "To establish a supervisor's liability under § 1983 [plaintiff] must show that 'an "affirmative link" exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.' "[36] In order for plaintiff to establish liability, it is not enough for plaintiff to show "that there were general deficiencies in the county's training program for jailers. Rather, [she] must identify a specific deficiency in the county's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused his jailer to act with deliberate indifference to his safety."[37] There is no evidence in the record tending to show that there was a specific training deficiency that actually caused Dunn's suicide.

The undisputed evidence shows that the Clay County Jail has instituted several policies to screen and to monitor a detainee's mental health, and that these policies were in place and were followed at the time of Shirley's arrest and detention.

---

35. See, e.g., Craig, 164 F.3d at 495.

36. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997) (quoting Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir.1988)).

37. Lopez v. LeMaster, 172 F.3d 756, 760 (10th Cir.1999).

First, since 1995, Clay County has employed a policy for screening detainees for potential suicide risks during the booking process. The booking officer followed this policy when Shirley was admitted into the Clay County Jail. Shirley was asked a series of questions about his mental health, and his answers did not reflect that he was a potential suicide risk. Additionally, from the booking officer's observations, there was no evidence based on Shirley's actions or words that would indicate he needed medical or psychological treatment at the time of his admission into the jail. The Clay County Jail also has a policy of refusing admission to the jail if a detainee appears to be ill or in need of psychological attention. If a detainee exhibits such symptoms, the booking officer is directed to obtain appropriate treatment for the detainee. This policy was followed during Shirley's admission to the jail. Because Shirley did not appear ill or in need of psychological attention, he was admitted to the jail without such treatment. Further, since 1995, the Clay County Jail has had a policy of providing immediate medical and/or psychological care to an admitted inmate who exhibits an onset of suicidal or bizarre behavior in the jail. Throughout Shirley's time at the Clay County Jail, Shirley never exhibited any behavior that would reflect a desire to injure himself or to commit suicide. Plaintiff offers no evidence to show that Shirley exhibited such behavior during his three weeks at the Clay County Jail that would have required officers to deny his admission to the jail or to monitor his behavior after his admission. Therefore, because the Clay County Jail had policies in place and these policies were followed with regard to Shirley's admission and detention, the Court finds that there is no genuine issue of material fact over whether there was a specific deficiency in the screening of detainees or monitoring of detainees that caused Shirley's suicide. Because the Court finds that plaintiff is unable to show that Dunn caused a constitutional deprivation, the Court need not proceed to determine if qualified immunity shields Dunn from suit.

### 2. Official Capacity Claim

■ Plaintiff's claim against Dunn in his official capacity as sheriff is another way of pleading an action against Clay County itself.[38] Municipalities and other local governments, such as counties, may be sued under § 1983 for constitutional torts.[39] A local government may be held liable where its action *"itself* violates federal law, or directs an employee to do so."[40] In order to establish liability, the government official must have committed a constitutional violation, and the entity itself must have been the "moving force" behind the alleged deprivation, so the entity's "policy or custom" must have contributed toward the constitutional violation.[41]

■ As is the case with supervisory liability, "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[42] In this case, the Court has found

38. *Id.*

39. *Myers v. Okla. County Bd. of County Comm'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998).

40. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 404–05, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

41. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Mo-nell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Myers,* 151 F.3d at 1316.

42. *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir.1993); *see Jiron v. City of Lakewood,* 392 F.3d 410, 419 n. 8 (10th Cir.2004) ("when a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation—i.e., the first step of the qualified immunity analy-

that there was no constitutional violation by Dunn. The Court found that Dunn lacked the requisite knowledge of a substantial risk of suicide by Dunn, and that Dunn did not fail to train or supervise his employees because adequate policies were in place at the Clay County Jail and such policies were followed during Shirley's admission and detention. Therefore, the Court grants summary judgment to all defendants on both the individual and official capacity claims under § 1983.

### B. State Law Negligence and Wrongful Death Claims

■■■■■ In exercising jurisdiction over plaintiff's pendent state law claims, the Court must be cautious in insuring that plaintiff's claims are properly before the court.[43] Defendants claim that plaintiff's state law claims must fail because plaintiff has not complied with the notice requirement of K.S.A. § 12–105b(d). "Under this statute, any person having a tort claim against a municipality must file a written notice before commencing an action against the municipality."[44] "The notice requirements in § 12–105b(d) are mandatory and a condition precedent to bringing a tort claim against a municipality."[45] "Moreover, '[s]ection 12–105b(d) applies not only to claims against a municipality, but also to claims against municipal employees acting within the scope of their employment.'"[46]

Defendants assert that neither Charles Dunn nor Clay County, Kansas, received any notice from plaintiff concerning a claim arising out of Shirley's death or any of the events alleged in this lawsuit.[47] By not responding to defendants' summary judgment motion, plaintiff has not controverted her failure to file a notice with both of the defendants. Plaintiff's "failure to comply with state law is fatal to her claims."[48] Therefore, the Court finds summary judgment appropriate for plaintiffs' state law claims.

**IT IS ORDERED** that defendants' Motion for Summary Judgment (Doc. 8) is **GRANTED**.

**IT IS SO ORDERED.**

---

sis—a finding of qualified immunity *does* preclude the imposition of municipal liability.").

**43.** *Ratts v. Bd. of County Comm'rs*, 141 F.Supp.2d 1289, 1320 (D.Kan.2001).

**44.** *Id.*

**45.** *Miller v. Brungardt*, 916 F.Supp. 1096, 1099 (D.Kan.1996) (citation omitted).

**46.** *Reindl v. City of Leavenworth*, 361 F.Supp.2d 1294, 1301 (D.Kan.2005) (quoting *Midwestern Motor Coach Co. v. Blattner*, No. 02–2483–KHV, 2003 WL 21105083, at *4 (D.Kan. Apr.10, 2003)).

**47.** (Doc. 9, Attach. 2 at ¶ 12;) (Doc. 9, Attach. 3 at ¶ 5.)

**48.** *Ratts*, 141 F.Supp.2d at 1320.